Good morning, Your Honor. Good morning, Counsel. May it please the Court, my name is Santia Gosselin, I represent the appellant Rungum in this matter. Okay. This appeal concerns Counsel, could you raise your mic, please? Thank you. Yes. This appeal concerns the Court, I represent the appellant Rungum in this matter. It doesn't seem like the microphone is turned on. Is the microphone working? It is rewinding. Okay, proceed. Backdrop. There you go. That includes the statute. That says nothing about antitrust immunity and specifies that the U.S. Olympic Committee has the normal corporate powers to sue and be sued. Now, we submit this was error for three different reasons. First, the District Court misapplied the correct legal test for implied antitrust immunity under this Court and the Supreme Court's jurisprudence. Second, its ruling was dangerously broad and out of step with implied immunity jurisprudence. And third, its factual assumptions or conclusions or findings, however we want to couch them, were inappropriate on a motion to dismiss. Now, as to the first implied immunity doctrine argument, the Supreme Court has long warned, as has this Court, about the need for caution in granting implied antitrust immunities. So, for example, with the Silver case, we learned that implied immunities are implied only to the extent necessary to make the underlying statute work and even then only to the minimum extent necessary. Subsequent Supreme Court cases articulated this test as requiring a convincing showing of clear repugnancy between the underlying statute and vindication of the antitrust laws. This Court, in cases like Fontel and Northrup, has similarly heeded the guidance of the Supreme Court and articulated the test as, and I quote from Fontel, antitrust exemption is appropriate only when the regulated entity is required to pursue a particular course of action to comply with an identifiable and specific regulatory mandate. Now, until this case, every court to analyze implied immunities under the ASA heeded this guidance and utilized this framework, looking for identifiable and specific mandates in the statute that necessitated the underlying activity. So, for example, in the Behagen case in the Tenth Circuit, the Court there analyzed a challenge to a would-be Olympian's amateur eligibility determination. And the Court there concluded that implied immunity was appropriate because, after all, the statute specifically required the U.S. Olympic Committee and its NGBs, its national governing bodies, to rule on precisely these sorts of amateur determinations for purposes of the Olympics. Counsel, in your view, what is the mandate under the ASA that the Court should have used as guidance? Well, I think that the Court took a look at the appropriate provisions that could conceivably yield an antitrust immunity. I think that its analysis was flawed, and I think its conclusion was wrong. That is... But your argument was that implied immunity only applies to the extent necessary to fulfill the mandates of the governing statute. So, in your view, what are the mandates of the ASA? Well, the mandates of the ASA, as they might be implicated here, right, include the district courts, and I'm even loathe to refer to it as a mandate. But the district court... But that was your word, not mine. Fair enough. They would include the broad authorization under 36 U.S.C. 220505, which permits the USOC, using language that the U.S. Olympic Committee may raise revenues, right? And then the statute supplies a vehicle to accomplish just that in the next subsection, 220506, which is specific trademark protections, the exclusive right to use the Olympic symbol, which we know USOC and its NGBs already market and license profitably. Right. But why isn't it within the mandate to determine the, for lack of a better phrase, time, place, and manner of advertisers for Olympic events or pre-Olympic events? Why isn't that included within the mandates that you've articulated? I think, Your Honor, my response has to do with the specificity required of implied immunities here. That is, in the face of congressional silence when it comes to antitrust immunity under the statute, we look under this Court's test and the Supreme Court's test for specific and identifiable mandates that are not just the broad authorization here or the specific trademark protection. And this test is not satisfied here when we're talking about the lack of fit between the broader general authorization and the specifics here. After all, the statute tells us nothing about logo regulations, the Olympic trials, athlete sponsorship for that matter. And I think it's instructive. But does it have to? Does the statute have to in order for that to be included within the broad mandate of the statutory language? I think there needs to be a greater level of specificity for purposes of implied immunity under this Court and the Supreme Court's jurisprudence. And I think if we look to the five cases that have examined implied immunities under the ASA, we learn just that, as I was saying before, the JES case, the Behagen case, found in the statute very specific commands satisfying this Court's test and satisfying the Supreme Court's test for that level of specificity. And in contrast, you have in TYR Court and Champions World and the 11-line case, the absence of that fit, the absence of that specific statutory authorization. But those cases don't purport to be the universe of implied immunity scenarios. They don't say here are the only circumstances in which implied immunity can lie. That's correct, Your Honor. But I think they yield some guidance when applying the Supreme Court's jurisprudence on implied immunity principles to the particulars of this statute. And so I think — Would you have a problem if the Olympic Committee bans all logos without exception on uniforms? I think the patent unfairness, that unfair marketing advantage that my client complains of, would be missing in that scenario. I don't think it would ultimately change the implied immunity analysis, but I think it would aid greatly the rule of reason analysis. Again, USOC and USATF are free to make many of these same arguments on the merits to the extent that this is a vertical arrangement. And the absence of — So they can ban everybody, but allowing the Nike Squoosh means that they would then have to allow your client to advertise on the uniform as well? Is that the gist of your argument? Not quite, Your Honor. The gist of my argument is that the implied antitrust immunity analysis wouldn't change, but rather the rule of reason analysis on the merits might. Because after all, as it currently stands, dozens of athlete sponsors are permitted at the Olympic trials. Rundgum alleges that there isn't a pro-competitive justification for this current arrangement, this status quo. And Rundgum further alleges that these same restrictions are not present in other U.S. sports at their Olympic trials. So to the extent that there was an outright ban on athlete sponsorship of this sort at the Olympic trials, one would hope that the USOC and USATF, who after all are hoping to benefit the sport more broadly, have a good pro-competitive reason for that ban. I also want to mention the district court's error in its understanding of certain dicta in the JES case. The JES case made clear that once the court locates the identifiable and specific statutory mandate required of implied immunity, it won't further go on to examine the wisdom of the particular rule or regulation at issue. And so, too, here we are not questioning the wisdom of the particular rule, but rather questioning whether that particular statutory mandate exists in the first place. And again, given that there are dozens of athlete sponsors already participating in the trials, and given that other Olympic sports in the United States, we allege, permit that which is prohibited here, we think that's lacking. The restrictions here are very much the result of independent initiative and choice, as contemplated by the Northrop case, and for that reason, undeserving of implied immunity. The second piece of our argument has to do with the scope of the district court's ruling. Despite Silver's caution that implied immunity should be narrowly construed, the district court seemed to locate, in these various subsections of the statute, implied immunity for any restriction that might somehow implicate USOC and USATF's ability to generate revenue. And we would submit that is extraordinarily broad and inconsistent with the existing jurisprudence. Every antitrust violation is going to implicate revenue in some way, and I think it's instructive that the only court to examine this argument that implied immunity lies under these two subsections, the TYR court specifically rejected that argument, saying that there can be a coexistence of antitrust scrutiny and the broad authorizations offered in these particular subsections. Ultimately, the district court... If implied immunity was appropriate, how should the district court have narrowed its ruling? I think the, I believe it's the last two paragraphs of the decision, right, discuss the sort of myriad ways in which the district court, and this actually plays into the next piece of my argument, the district court essentially started finding facts that are contrary to the nonexistent record here and the allegations offered. And so to the extent that the district court was correct, which obviously we disagree with, that implied immunity adhered under these two subsections, I think it should have made significantly clearer what conduct is entitled to implied immunity and why it is that this ruling can't be used more broadly. Because after all, I read this decision as an invitation to the NGBs and the U.S. Olympic Committee, as well as defendants in other industries, frankly, to seek to expand the previous doctrine of implied antitrust immunity. Are there any allegations that complain of any economic benefit to the committee as a result of the enforcement of these regulations? Well, we note, for example, that there are discrete bodies of sponsors, that there is on the one hand a group of corporate sponsors for USOC and USATF, and those are predominantly non-apparel manufacturers, but Nike is among them. On the other hand, we note that the athlete sponsors are currently limited to the approved apparel manufacturers. And in our briefing and animating the complaint, I'm not sure standing here if this is included as an allegation, but we certainly make the point that the result is, notwithstanding our relevant market allegations, that USOC and USATF are trying to reserve for themselves a pool of would-be sponsors who have no available alternative, however inapt the substitution, right? But that doesn't answer my question about whether it results in any benefit, economic benefit, to the defendants. Well, we submit that it was this regulation to basically help the athletes out with no economic benefit to the defendant, in which case you might have an enforceability question when you're trying to bring an antitrust claim, or are there allegations sufficient to basically tie it to some sort of economic benefit? Well, we believe it will develop those as the case proceeds, and we feel that there are sufficient pleadings for that purpose. But again, there's no requirement of specific allegations of economic benefit for purposes of alleging an antitrust violation under Section 1. And I see that I'm down to one minute remaining. I'd like to reserve the remainder of my time for rebuttal, if I may. All right. Thank you, counsel. Good morning, counsel. Will you be the only one arguing? Yes, Your Honor. All right. Thank you. Good morning, Your Honors, and may it please the Court, Derek Ludwin for appellees. Antitrust immunity is implied under the Amateur Sports Act to the extent necessary to make the statute work. Congress gave the Olympic Committee exclusive control over the Olympic name and symbols. The responsibility or mandate to use that Olympic brand to finance U.S. participation in the Olympics is an exclusive jurisdiction over all matters pertaining to that participation. The challenged regulations, which govern only what athletes wear on the field of competition at an Olympic-branded U.S. Olympic trials event, are at the confluence of those three statutory provisions. RunGum freely admits that it seeks to advertise caffeinated chewing gum on the field of competition at the U.S. Olympic trials to associate its product with what it calls the hallowed aura provided by the Olympic trials. It recognizes that other companies pay for that right. RunGum instead wants to free ride on what the Supreme Court in San Francisco Arts called the commercial magnetism of the Olympic brand. The regulations protect the Olympic brand and the Olympic trials from that type of unauthorized advertising. The Supreme Court has already gone through the legislative history and congressional intent of the ASA on these issues, stating that USOC's exclusive control of the Olympic brand directly advances congressional intent by supplying the United States Olympic Committee with the means to raise money to support U.S. Olympic participation, pages 537 to 39 of that decision. The district court properly concluded, following that Supreme Court precedent and the Supreme Court's decision in Silver and Gordon and three circuit courts, that the USOC and USATF must have the ability to, quote, preclude athletes from becoming human billboards at the trial. That's ER19. And if you look at the district court's opinion, those last two paragraphs, the district court is resolving that narrow question. The question about regulations at the confluence of Olympic branding, financing for the Olympics, and matters pertaining to participation in the Olympics. They all come together at the U.S. Olympic branded Olympic trials. And that's what that decision was about. Application of the antitrust laws would conflict with that broader authority to decide how best to govern apparel on the field of competition at an Olympic branded event. We're not seeking a special standard here, a more lax standard. This Court's 1981 decision in Fonatel recognized that the various widely repeated refrains, to use their term, of the immunity standard are limited, are of limited value in application. Implied immunity should be considered on an industry-by-industry basis. It's page 727. Three circuit courts have looked at this industry and all come out the same way. And the different articulations of that standard that we've seen since Fonatel, clearly repugnant, unduly interfering, or the Supreme Court's latest articulation in Credit Suisse, which is clearly incompatible, are all different ways to help answer the baseline question of whether immunity is necessary to make the statute work. We noted all these different articulations in our brief. Rundgum argues here that it is not questioning the wisdom of the particular statute, but that is precisely what they are doing and precisely what the JES and Gordon courts said are not relevant to the immunity analysis. The question of whether or not there should be an exception for standard manufacturer's marks on the field of competition goes to the wisdom of the particular rule. The question of whether there should be an exception for standard manufacturer's marks on the field of competition goes to the wisdom of the particular rule. The question for this Court is whether the confluence of three specific statutory provisions provides sufficient evidence of congressional intent that Congress did, of course, intend the United States Olympic Committee to have control over what athletes wore on the field of competition at the Olympic trials. The question of whether there should be an exception was not, as we saw in Gordon, whether fixed commission rates in that case were a good idea or not. The Court refused to reach that question. Go ahead. Would the case be any different if the committee were to have a regulation that says, well, we get to pick who can advertise on the uniforms and not? So, Rundgum, you can have a small logo, but, yet, Company X, you're not allowed to do that. Would that be a concern? It would not be an antitrust concern, Your Honor. It sounds like it would be implementing a licensing program at the Olympic trials, no different than, of course, the fact that Olympic sponsors do have marks and logos appearing around the Olympic trials, and that is, of course, consistent with the San Francisco Arts decision and the Second Circuit's IntelliLicense decision. That's, of course, exactly what the United States Olympic Committee is supposed to do to generate revenues for, to support Team USA. Now, if there were other concerns with that picking and choosing, there is nothing in the implied immunity that exempts the United States Olympic Committee from any other law other than antitrust law. But in terms of the antitrust law, there is nothing in the implied immunity that exempts the United States Olympic Committee from any other law other than antitrust law. The control over what athletes wear on the field of competition at an Olympic-branded event would rise to an ability to pick and choose licensees and non-licensees. And that goes to the fact that the district court didn't make findings of fact, because it's clear from the record, it's clear from the complaint, that what Rungum wants is a challenge to that specific control, the control that Your Honor just asked about. And it needs no factual findings to conclude, following all of this precedent, that impinging on the Olympic brand, using the antitrust laws to allow Rungum to insert itself onto the field of competition, would necessarily reduce the value of the brand and the licensing revenues from sponsors. Those allegations and materials provided more than enough support for the district court's conclusion, even taking all factual inferences in Rungum's favor. And the TIR and Champion of the World courts, those cases do not support reversal. They presented issues far from the epicenter of the ASA's directives. TIR, of course, involved pure commercial activities, unrelated to any rules at the time, and they presented, promulgated by the United States Olympic Committee or an NGB. Champions World rejected an effort to expand directives with respect to amateur or Olympic athletics to cover governance of professional sport. I did want to mention briefly the references to other Olympic trials that Rungum's counsel mentioned. These references, which are to USA Wrestling from their complaint, are red herring for two different reasons. First, Rungum does not allege, nor could it, that USA Wrestling hosted a branded Olympic trial event. I'm underlining the word Olympic there, without applying the regulations. The regulations that Rungum challenges govern only an event at the confluence of the branding and the financing and the participation in Team USA. And that distinction matters. To the extent USA Wrestling hosts a non-Olympic branded event, even one that may determine in part or whole who gets recommended for Team USA, the regulations challenged here today simply don't apply. But if USA Wrestling or any other NGP wants to call its trials the Olympic wrestling trials and to use the commercial magnetism of the Olympic brand, well, then the regulations apply. And then the ASA's exclusive jurisdiction grant to USOC immunizes from antitrust challenge those regulations. By the same token, the fact that the USOC can sue and be sued has no bearing on the immunity analysis. Many private institutions are afforded implied immunity, but of course can also be sued for any other law. And that's the case here. And the final point on immunity that I would like to make is that there's no broad, unfettered exemption to be found in the district court's opinion or in our arguments. What we are seeking immunity for is a regulation that is limited to competition apparel on the field of competition at the U.S. Olympic trials. There's no suggestion in the district court opinion that any act of the U.S. Olympic Committee, which might have any bearing, happen to have any bearing on its finances, is somehow exempted as well. If there are no questions on immunity, I did want to mention that there is an independent basis for affirmance, which is that the relevant market, which was discussed a little bit in the opening, is patently contorted to a single means of advertising, that is, a logo, through athlete sponsorship, at a single event that happens once every four years. And RunGum can't just say that's unique. They have to plausibly show why all of the other USATF, championship and other events, and the Boston Marathon, and digital and print media, and endorsements by athletes in all of those forums, are not reasonable substitutes. Counsel, the district court elected not to address that issue, correct? Correct, Your Honor. And this Court needn't address it either if it rules, if it affirms on the immunity ground. I don't know about my co-panel members, but I would not be inclined to address an issue that was not addressed by the district court. Thank you, Your Honor. Thank you. Your Honor, just very briefly, my friend, Mr. Lundwin, really leans heavily in his argument on San Francisco Arts and Intel license, the two Supreme Court cases that tell us nothing about antitrust immunity whatsoever, but rather talk about the trademark protections. And both cases in 220506, and both cases involve blatant trademark theft. RunGum is not accused here, nor does it have any intention of misappropriating the trademark protections afforded USOC. And moreover, that subsection includes a specific cause of action that USOC has vindicated, as in those cases, in the event of anyone who treads on that exclusive right to license. Second, there's the argument made below and here today and in the district court opinion that this will lead somehow to an explosion of advertising of the trials. We don't challenge the size, quantity, or placement of these sponsor identifications that already exist. We only ask that RunGum be given the opportunity to compete for these opportunities for athlete sponsorship. Unless the panel has any further questions, I thank you for your time. Thank you, counsel. Thank you to both counsel for your helpful arguments in this case. The case just argued is submitted for decision by the court.
judges: Rawlinson, Nguyen, Garbis